<strong>IN THE UNITED STATES DISTRICT COURT FOR THE<br>
WESTERN DISTRICT OF MISSOURI<br>
SOUTHER DIVISION</strong>

| | |
|---|---|
| NORTHSTAR BATTERY COMPANY, L.L.C. | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 6:18-CV-03065-MDH |
| EXENERGY, L.L.C., | ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction And/or to Transfer This Matter to the United States District Court for the Northern District of Illinois. (Doc. 11). Defendant argues this Court lacks personal jurisdiction over Defendant, and that a forum selection clause compels transfer to a different forum. After careful consideration, this Court finds that it has personal jurisdiction over Defendant and that the forum selection clause is inapplicable. Consequently, the Court will deny Defendant's motions.

### I.  BACKGROUND

Plaintiff alleges in its Amended Complaint that Defendant breached a sales contract where Defendant agreed to purchase batteries and other related products from Plaintiff. Plaintiff alleges that it has delivered the items to Defendant, but that Defendant has not paid. Plaintiff states a Suit on Account and a Quantum Meruit claim in the alternative, and seeks to recover $1,027,482.20 from Defendant excluding accrued interest.

Plaintiff is a battery company whose principal place of business is in Springfield, Missouri. It designs, manufactures, and deploys batteries and related products across the United States. Defendant is an Illinois company that manufactures and deploys integrated energy solutions.

## II. <u>DISCUSSION</u>

Defendant argues that this Court lacks personal jurisdiction because it lacks minimum contacts with the forum state such that the maintenance of the suit offends traditional notions of fair play and substantial justice. Defendant also argues that a forum selection clause in a contract compels Plaintiff to bring this case in the U.S. District Court for the Northern District of Illinois. The Court will discuss these arguments in turn.

### A. Personal Jurisdiction

This Court when sitting in diversity may only exercise personal jurisdiction over a nonresident defendant when the case satisfies Missouri's long arm statute and when the defendant "such minimum contacts with the forum that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Dairy Farmers of America, Inc. v. Bassett & Walker International, Inc.*, 702 F.3d 472, 477 (8th Cir. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945) (internal quotations omitted)). Defendant does not dispute that the long-arm statute, RSMo. § 506.500, reaches this case. There are five factors for this Court to consider when deciding whether minimum contacts exist: 1) The nature and quality of Defendant's contacts with the forum state; 2) the quantity of the contacts; 3) the relationship of the cause of actions to the contacts; 4) the interest of the forum state in providing a forum; and 5) the relative convenience to the parties. *Id.* The first three factors are primary for the Court. *Id.* However, the "fundamental inquiry is whether the Defendant has purposefully availed itself of the benefits and protections of the forum state to such a degree that it should reasonably anticipate being haled into court there." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 594 (8th Cir. 2011). In addition, merely entering into a contract with a forum resident does not provide the minimum

contacts necessary to support personal jurisdiction. *Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 313 (8th Cir. 1982).

Defendant relies in his argument on affidavits by the President of EnXergy and two former Northstar officials. These affidavits state that no meetings involving the purchase of product from Northstar occurred in Missouri (Doc. 11 at 27), that no agent of EnXergy ever traveled to Missouri for the purpose of buying product, *Id.*, and that no negotiations for any agreement ever occurred in Missouri. *Id.* These affidavits are meant to show an absence of physical contact between Defendant and Missouri. However, physical presence in a state is not necessary to establish personal jurisdiction. *Burger King Corp., v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Notwithstanding the affidavits, each of the five factors weigh in favor of finding sufficient contacts to support jurisdiction. First, Defendant had substantial and numerous contacts with the state of Missouri, evidenced in the record by the invoices it sent there, its emails, and its substantial business dealings with Plaintiff, a Missouri company. The relationship between the cause of action and the contacts is strong—the contract dispute will most likely hinge on the communications and negotiations between the parties across state lines. Missouri has a strong interest in providing a forum to a Missouri company seeking compensation for an alleged injury whose effects will be felt in Missouri. And, finally, Defendant has not alleged that it is inconvenient for this matter to proceed in Missouri. More fundamentally, it is obvious that Defendant purposefully availed itself of the protections and benefits of the forum state when it contracted with a Missouri company to manufacture and ship batteries in and from Missouri.

The instant case is analogous to *Zucker Feather Products, Inc. v. Holiday Image, LLC*, 2015 WL 1275428 (2015). In that case, Zucker Feather, a Missouri company, contracted with Holiday Image to supply them with "angel wings" made from feathers. *Id.* at 1. After litigation

commenced, Holiday Image, a Delaware corporation, asserted a lack of personal jurisdiction because of insufficient minimum contacts with Missouri. The Court disagreed, holding that there were sufficient contacts because although Holiday Image agents never visited Missouri and all communications were over email or via phone, the company still purposefully availed itself of the forum by soliciting Zucker Feathers in Missouri, negotiating contracts in Missouri, submitting purchasing orders in Missouri, and working extensively with Missouri employees to design, manufacture, and ship products in and from Missouri. *Id.* at 8; *see also Wells Dairy, Inc. v. Food Movers International, Inc.*, 607 F.3d 515, 520 (8th Cir. 2010) (finding personal jurisdiction where Defendant lacked physical presence but had substantial and complex business dealings with Plaintiff residing in forum state). The Court held additionally that Missouri had an interest in providing a forum for the Missouri corporation. *Id.* In the instant case, as in *Zucker Feather Products*, it is clear that Defendant's contacts are cumulatively substantial enough to establish personal jurisdiction.

Because Defendant has such minimum contacts with the forum that the maintenance of the suit does not offend traditional notions of fair play and substantial justice, and because the case is permitted by Missouri's long-arm statute, the Court will deny Defendant's motion to dismiss for lack of personal jurisdiction.

### B. Forum Selection Clause

A forum selection clause is "a significant factor that figures centrally in the district court's calculcus" when deciding whether to transfer a case. *Terra Intern., v. Mississippi Chemical Corp.*, 119 F.3d 688 (8th Cir. 1997) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). However, before the Court factors the forum selection clause into its calculus, it must determine

4

whether the language of the clause invoked by Defendant applies to the instant case. The clause states in pertinent part:

> Each of the parties in any suit, action, or proceeding arising out of or relating to this Agreement, irrevocably (A) submits to the jurisdiction of the state courts of the State of Illinois and the United States District Court for the Northern District of Illinois over any suit, action or proceeding arising out of or relating to this Agreement, (B) waives to the fullest extent enforceable under applicable law any objection . . ."

(Doc. 11 at 19). This clause is inserted in a contract submitted to the Court by Defendant titled "Supply Agreement for UPS Cabinets for Eaton-Powerware". (Doc. 11 at 10). The Supply Agreement provides that Defendant will be the exclusive supplier to Plaintiff of certain types of batteries and UPS cabinets. *Id.*

Plaintiffs assert that this contract, and its attendant forum selection clause, does not cover the instant dispute. They argue that in the instant dispute they are the seller and Defendant is the buyer, whereas the Supply Agreement invoked by Defendant exclusively concerns situations where Defendant is supplying goods to Plaintiff.

Defendant's argument relies on three affidavits from former Northstar and EnXergy officials, each stating that the purchase orders and invoices from the instant dispute "are covered by, and are subject to, the supply agreement." (Doc. 16). Plaintiff produced an affidavit from a current Northstar official stating the opposite—that the Supply Agreement does not apply to the disputed contract. (Doc. 13-1 at 2). Defendant also cites to "Schedule A" of the agreement, which states freight guidelines for when Defendant places orders with Plaintiff for products to be shipped from Plaintiff's business in Missouri. (Doc. 11 at 22). Defendant argues this clause shows that the Supply Agreement contemplates purchases made by Defendant, including the disputed one in this case.

After careful review of the Supply Agreement, this Court finds that it is inapplicable to the instant dispute. The Supply Agreement is an exclusive supplier agreement whereby Defendant agrees to supply Plaintiff with certain goods, and Plaintiff agrees to exclusively obtain those goods from Defendant. The contract at issue here, where Plaintiff sold goods to Defendant, runs in precisely the opposite direction. The affidavits produced by Defendant state legal conclusions and contain only the bare assertion that the disputed contract is subject to the Supply Agreement. They contain no factual statements that actually connect the two. In addition, Defendant's invocation of "Schedule A" of the Supply Agreement is unconvincing. Schedule A is meant to be read in the context of the Supply Agreement, not as the representation of a universal agreement covering all shipments between the parties. In the context of a large-scale supply agreement, it is easy to imagine a scenario where the supplier might need to order a part or a device from the supplied party. The Court will not assign a limited freight guideline clause the immense importance that Defendant asks us to here.

In lieu of any language in the Supply Agreement that would plausibly extend its scope to the instant dispute, this Court refuses to find that the instant dispute arises out of or relates to the Supply Agreement. Because Defendant cannot show the existence of any forum selection clause that applies to the disputed contract, the court will deny its motion to transfer the case to another forum.

### III. <u>CONCLUSION</u>

For the reasons stated above, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED** and its Motion to Transfer This Matter to the United States District Court for the Northern District of Illinois is **DENIED**.

**IT IS SO ORDERED**.

DATE: AUGUST 22, 2018

                                          */s/ Douglas Harpool*
                                          **DOUGLAS HARPOOL**
                                          **UNITED STATES DISTRICT JUDGE**